IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER J. BLAIR, JR. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| MARTIN J. O'MALLEY, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO. 23-2983 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                                  April 16, 2024

Walter J. Blair, Jr. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it, and Plaintiff has replied. For the reasons set forth below, Plaintiff's request for review is denied.

### I.  PROCEDURAL HISTORY[1]

On March 22, 2021, Plaintiff applied for DIB, alleging disability, because of physical and mental health impairments, that commenced on November 8, 2018. R. 12. The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing. *Id.* On March 16, 2022, due to COVID-19 precautions, Plaintiff appeared for a telephone hearing, before Marc Silverman, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney, and Kelly Ann Inverso, a vocational expert, ("the VE") testified at the hearing. *Id.* On May 4, 2022, the ALJ,

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Matters Complained of On Appeal ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record. ("R.").

using the sequential evaluation process ("SEP") for disability,[2] issued an unfavorable decision. R. 12-36. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on June 13, 2023, making the ALJ's findings the final determination of the Commissioner. R. 1-3. Plaintiff now seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.     FACTUAL BACKGROUND

A.     Personal History

Plaintiff, born on August 18, 1972, R. 35, was 49 years old on the date of the ALJ's decision. He lives with his wife and two daughters. R. 65. Plaintiff last worked in November 2018, after being injured at work. R. 54.

B.     Plaintiff's Testimony

At the March 16, 2022 administrative hearing, Plaintiff testified about his physical and mental impairments. R. 49-67. In November 2018, he fell at work and injured his left shoulder

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

and ribs. R. 54-55. He has undergone multiple surgical procedures to heal his left shoulder, but his pain and limitations persist. R. 55-56. After years of physical therapy for his left shoulder, R. 61, pain and stiffness persist such that Plaintiff is unable to lift more than ten pounds. R. 56.

Medical testing prior to Plaintiff's first left shoulder surgery revealed chronic obstructive pulmonary disease ("COPD"). R. 55. This ailment causes Plaintiff to tire easily and requires breaks when performing physical tasks. R. 56. He also experiences chest tightness and difficulty breathing, as a result of his COPD. R. 62. Plaintiff cannot walk for any appreciable distance. R. 56.

Plaintiff's shoulder surgeon discovered nerve impingement problems with Plaintiff's left and right elbows. R. 55. Numerous surgical procedures on each elbow have not alleviated his symptoms. R. 57. Plaintiff, post thumb and carpal tunnel surgery, R. 55, has a great deal of pain and poor grip strength. R. 57. The day after the ALJ hearing, Plaintiff was scheduled to have another right elbow surgery; after recovery from that, he will have left elbow surgery. R. 55. Notwithstanding his intractable pain, Plaintiff's doctors have refused to prescribe opioid pain medication, for fear of causing addiction; they only prescribe Tylenol. R. 61.

Plaintiff cannot open jars and drops objects. *Id.* He is unable to fasten buttons or tie shoelaces and has difficulty picking up small objects, like paper clips. R. 58. As a result, unless his wife helps dress him, he does not wear pants that have buttons, or laced shoes. *Id.*

Plaintiff estimated that he could sit for up to thirty minutes at a time and stand for no more than ten to fifteen minutes, as a result of his pain. R. 62-63. Plaintiff believed he could walk only fifteen to twenty yards, before needing to rest. *Id.* On a typical day, he lies down to rest for two to three hours. R. 65.

Secondary to his physical limitations, Plaintiff has developed anxiety, depression and

entertained suicidal thoughts. R. 56, 58-59. When thoughts of suicide, which run in his family, commenced, Plaintiff sought mental health treatment. R. 58. Zoloft was prescribed to treat his mental health problems. R. 59. Plaintiff's doctor has steadily increased his daily dosage of Zoloft and is contemplating another increase. R. 60. Plaintiff is very irritable and quickly frustrates. R. 58-59. In addition, he has difficulty sleeping and concentration deficits. R. 59.

C.    Vocational Testimony

The VE characterized Plaintiff's past warehouse manager position as a light,[3] skilled[4] job, his material handler job as heavy[5] and semi-skilled,[6] and his tank truck driver job as a medium,[7] semi-skilled position. R. 68-69. The ALJ asked the VE to consider an individual of Plaintiff's age, education and work experience, who could perform only light work with several additional limitations: only occasionally able to reach overhead bilaterally; frequently able to reach bilaterally in all other directions; occasionally able to finger and handle with the dominant right hand; limited to simple tasks in a routine work setting; and able to tolerate frequent changes to the work setting. R. 69-70. The VE opined that, although this person could not perform any of Plaintiff's past jobs, they could perform the alternative, unskilled[8] jobs of: (1) usher, 15,000

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).
[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. . . . Other skilled jobs may require dealing with people, fact, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).
[5] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).
[6] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*
[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).
[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

4

positions in the national economy; (2) information clerk, 25,000 positions in the national economy; and (3) ticket taker, 10,000 positions in the national economy. R. 70-71. The VE opined that, if the same individual would be off-task 20% of the workday, he could not perform any work. R. 71. Finally, Plaintiff's attorney asked the VE to consider the same individual as in the first hypothetical question, but limited to sedentary,[9] instead of light, work. R. 72. The VE opined that this person could not perform any sedentary work because of the limitations to unskilled work and ability to only occasional use both hands. *Id.*

### III.   THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2023.

2. [Plaintiff] not engaged in substantial gainful activity since November 18, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: moderate to severe right thumb CMC osteoarthritis with large loose body adjacent to CMC joint, status post right thumb CMC arthroplasty, right DeQuervain's release, and right carpal tunnel release; elbow osteoarthritis bilaterally, status post right elbow debridement, loose body excision, and open ulnar nerve release; status post left rotator cuff surgery; coronary artery disease; obesity; depression; and anxiety disorder (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that, [Plaintiff] had the residual functional capacity to perform

---

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

|     |     |
| --- | --- |
|     | light work as defined in 20 CFR 404.1567(b) except reaching overhead bilaterally is limited to occasional; reaching in all other directions bilaterally is limited to frequent; handling and fingering with the dominant right hand is limited to occasional; limited to simple tasks in a routine environment; and can tolerate frequent changes in the work setting. |
| 6.  | [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565). |
| 7.  | [Plaintiff] was born on August 18, 1972 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). |
| 8.  | [Plaintiff] has at least a high school education (20 CFR 404.1564). |
| 9.  | Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not [Plaintiff] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a)). |
| 11. | [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 18, 2018, through the date of this decision (20 CFR 404.1520(g)). |

R. 14-16, 19, 34-36.

### IV.   DISCUSSION

A.   <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v.*

*Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.   <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460

(1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C. <u>Review of the Administrative Law Judge's Decision</u>

Applying the sequential evaluation process, the ALJ determined that, while Plaintiff could not perform his past relevant work, he could perform other, unskilled, light jobs that exist in the national economy and, hence, was not disabled. R. 12-36. Plaintiff disputes the ALJ's decision and argues that the ALJ's residual functional capacity ("RFC") assessment cannot be reconciled with his acceptance of a particular limitation found by Melissa Franks, Psy.D. Pl. Br. at 4-9. The Commissioner denies Plaintiff's assertion that the ALJ committed reversible legal error. Resp. at 1-9. This court finds that Plaintiff's claim lacks merit, because the ALJ did not make the finding Plaintiff attributes to him and the ALJ properly evaluated Ms. Franks' opinions collectively.

Plaintiff's entire argument is premised on the assertion that the ALJ accepted Ms. Franks' opinion that, as a result of his mental impairments, Plaintiff was limited to one-to-two step tasks. Pl. Br. at 6-7. Plaintiff argues that it was error for the ALJ to omit this specific limitation from the RFC assessment, and that its inclusion in setting the RFC and posing a hypothetical question to the VE would have meant that all jobs the VE identified would be unavailable, inasmuch as all

three require reasoning ability beyond one-to-two step tasks. *Id.* at 7-9. Plaintiff's argument fails, because the ALJ neither accepted Dr. Franks' opinion in this regard nor found that Plaintiff is limited to one-to-two step tasks.

In the part of the Decision that considered whether Plaintiff met either Listed Impairment 12.04 or 12.06, which are the relevant mental health listings, the ALJ noted Dr. Franks' August 2021 opinion that Plaintiff could perform one-to-two step tasks. R. 17. However, when the ALJ later evaluated Ms. Franks' August 2021 opinions collectively, in the section of his Decision that addressed Plaintiff's RFC, he did not mention the one-to-two step task limitation. *See* R. 34. Instead, the ALJ mentioned other opinions of Dr. Franks, before rejecting her opinions collectively on the grounds that they were inconsistent with the record and based solely on a one-time record review rather than the entire record. *See id.*

Given the ALJ's explanation, it is not reasonable to conclude that the ALJ accepted, as relevant to Plaintiff's RFC, Dr. Franks' opinion that Plaintiff was limited to performing one-to-two step tasks. Furthermore, consistent with the governing regulation, the ALJ reviewed Dr. Franks' medical opinions collectively and did not individually accept or reject some of them. *See* 20 C.F.R. § 404.1520c(a), (b)(1). It was also consistent with the governing regulations for the ALJ to consider that Dr. Franks' opinions were based upon a one-time record review, when deciding how persuasive her opinions were. *See* 20 C.F.R. § 404.1520c(c)(3)(v). Hence, since the ALJ did not accept the opinion Plaintiff relies upon and applied properly the governing regulation, the ALJ committed no error.

An implementing order and order of judgment follow.